# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

———

Argued April 6, 2026           Decided July 17, 2026

No. 25-3035

UNITED STATES OF AMERICA,
APPELLANT

v.

DAVID JEREMY ZOBEL,
APPELLEE

———

Appeal from the United States District Court
for the District of Columbia
(No. 1:21-cr-00333-1)

———

*Nicholas P. Coleman*, Assistant U.S. Attorney, argued the cause for appellant. With him on the briefs were *Jeanine Ferris Pirro*, U.S. Attorney, and *Chrisellen R. Kolb*, Assistant U.S. Attorney.

*A. J. Kramer*, Federal Public Defender, argued the cause and filed the brief for appellee.

Before: PILLARD, WILKINS and KATSAS, *Circuit Judges*.

Opinion for the Court filed by *Circuit Judge* PILLARD.

Concurring opinion filed by *Circuit Judge* KATSAS.

PILLARD, *Circuit Judge*:    David Zobel has been charged with distributing child pornography and attempting to sexually exploit a minor.   Before trial, the government proposed to introduce evidence of Zobel's prior conviction for child molestation under Federal Rule of Evidence 414.  The district court excluded that evidence, reasoning that under Rule 403 the risk of unfair prejudice substantially outweighed the probative value of that evidence.   The government appeals the district court's *in limine* rulings.

We hold that we have jurisdiction under 18 U.S.C. § 3731 to review the district court's decision to exclude the prior-conviction evidence.  The record suggests that the district court misunderstood how Rule 414 affects the Rule 403 analysis in child-molestation cases where the government seeks to introduce evidence of prior child molestation.  We take this opportunity to clarify the relationship between Rules 403 and 414, vacate the district court's orders excluding references to prior child molestation, and remand the case to the district court for a fresh determination under the correct legal framework.

## I.

## A.

We start by introducing the relevant evidentiary rules as background to our discussion of how those rules interact.

Rules 402 and 403 jointly codify the presumption that relevant evidence is ordinarily admissible unless sufficiently weighty grounds warrant exclusion.  Rule 402 provides that "[r]elevant evidence is admissible" unless federal law, including any other Federal Rule of Evidence, provides otherwise.  Rule 403, in turn, states that a court "may exclude relevant evidence if its probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing the

issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." The consideration at issue in this case is "unfair prejudice." By providing that the probative value of contested evidence "must be 'substantially' outweighed by considerations such as 'unfair' prejudice," Rule 403 sets a "high barrier" for the exclusion of relevant evidence. *United States v. Lieu*, 963 F.3d 122, 128 (D.C. Cir. 2020).

Rule 404(b) addresses the admissibility of a particular category of evidence: evidence of "other crimes, wrongs, or acts" (formatting modified). Such evidence "is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Fed. R. Evid. 404(b)(1). The law has long treated this so-called "character" or "propensity" evidence as relevant. *See Michelson v. United States*, 335 U.S. 469, 475-76 & n.9 (1948) (citing *Reg. v. Rowton,* 10 Cox's Criminal Cases 25, 29-30 (1865)). Common law courts nonetheless "rejected" the use of prior bad acts to establish bad character on the view that "practical experience" shows propensity evidence to "weigh too much with the jury and to so overpersuade them as to prejudge one with a bad general record and deny him a fair opportunity to defend against a particular charge." *Id.* at 475-76. In that sense, Rule 404 reflects a categorical judgment, rooted in the common-law tradition, that allowing a jury to draw a propensity inference from evidence of a defendant's prior bad acts creates an unfairly "prejudicial effect that outweighs ordinary relevance." *Old Chief v. United States*, 519 U.S. 172, 181 (1997) (quoting *United States v. Moccia*, 681 F.2d 61, 63 (1st Cir. 1982) (Breyer, J.)).

At the same time, Rule 404(b) recognizes that evidence of prior bad acts may "be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan,

knowledge, identity, absence of mistake, or lack of accident." Fed. R. Evid. 404(b)(2). Rule 404(b), in other words, identifies a category of evidence (prior bad acts) and prohibits using that evidence for one relevant purpose (to prove a propensity for such conduct) while allowing it for others.

But there is an exception to that propensity bar. In 1994, Congress added Rule 414 to the Federal Rules of Evidence—along with Rules 413 and 415—to address the admissibility in sex-offense cases of evidence of the defendant's past commission of similar crimes. *See* Violent Crime Control and Law Enforcement Act of 1994, Pub. L. No. 103-322, § 320935, 108 Stat. 1796, 2135-137. Rule 414 provides in relevant part that "[i]n a criminal case in which a defendant is accused of child molestation, the court may admit evidence that the defendant committed any other child molestation" and that such evidence may be "considered on any matter to which it is relevant." Fed. R. Evid. 414(a). Rule 414 thereby lifts the general bar against the admission of evidence of prior bad acts to infer a defendant's propensity for child molestation.

In amending the rules, Congress appears to have concluded that, for sexual offenses against children, a history of similar acts is particularly probative of a disposition to do so in the future. *See* 140 Cong. Rec. H8968, H8991 (daily ed. Aug. 21, 1994) (statement of Rep. Molinari) (citing David J. Karp, Evidence of Propensity and Probability in Sex Offense Cases and Other Cases, 70 Chi.-Kent L. Rev. 15 (1994)). Whatever Congress's reasons, Rule 414 reflects a determination that, in a case in which a defendant is charged with a child-molestation offense, the factfinder should be allowed to infer that because the defendant committed a child molestation in the past, he is likely to have done so in the current case.

**B.**

In 2021, David Jeremy Zobel was indicted on, inter alia, two counts of child-pornography distribution, 18 U.S.C. § 2252(a)(2), (b)(1), and one count of attempted sexual exploitation of a minor, 18 U.S.C. § 2251(a), (e). *See* Indictment (J.A. 151-53).

The grand jury indicted Zobel based on a series of online messages exchanged in December 2020 between an undercover FBI agent and someone the government believes was Zobel. *See* Indictment (J.A. 151-52); Gov't Feb. 21, 2025, Mot. in Limine 5 (J.A. 129). According to the government, a person using the username "slothllama99" and the display name "Jeremy Teasdale" initiated a conversation with the undercover agent on an online messaging platform called KIK in response to an advertisement the agent posted on a different website known for discussion and distribution of child pornography. Gov't Feb. 21, 2025, Mot. in Limine at 1-2 (J.A. 125-26). The individual introduced himself as a 40-year-old man residing in Ohio and "a middle aged sex offender with lots of good memories." *Id.* at 2 (J.A. 126). During the conversation, he shared links to and images of child pornography with the agent, *id.* at 4 (J.A. 128), and expressed interest in watching the agent sexually abuse the agent's purported 8-year-old daughter, *id.* at 3 (J.A. 127).

Seeking to gain the agent's trust, the individual claimed and attempted to prove that he was a convicted sex offender. In that regard, the individual messaged the agent two photographs of printed court documents showing a conviction for coercion and enticement of a minor, 18 U.S.C. § 2422(b), issued by the United States District Court for the Southern District of Ohio. *Id*. In the photographs, the documents were partially obscured by a hand, which covers the offender's name

but leaves visible parts of the case number and the Electronic Court Filing (ECF) caption. *See id*. The individual also explained that he sexually abused his 12-year-old daughter and her friend, was arrested after the friend reported the abuse, did "10 years in prison for it lol," is "still on probation," and that "2008 is when it happened." *Id.* at 2 (J.A. 126).

As told in the government's filings below, an investigator matched the visible information on the photographs of the court documents shared in the chatroom to defendant Zobel's court records. *Id.* at 5 (J.A. 129). According to the government, the court records showed that Zobel pled guilty to coercion and enticement of a minor in violation of 18 U.S.C. § 2422(b) in the Southern District of Ohio in 2011, that he committed the crime leading to that plea between November 2008 and June 2009, and that he served approximately 10.5 years in prison and was still on probation for it. *Id.* Other records confirmed that Zobel lived at an address in Columbus, Ohio, and that the individual who communicated with the agent had used the IP address registered to Zobel at the same Columbus address. *Id.*

The government further proffered that when law-enforcement agents showed up at Zobel's workplace the day after the online chat with the undercover agent, Zobel fled. *Id.* at 6 (J.A. 130). According to the government, when a law enforcement officer reached Zobel by phone and asked him why he fled, he said he did not want to go back to jail. *Id.* Agents then located and arrested Zobel and executed a search warrant at his residence—a halfway house for sex offenders—where officers seized a cell phone from Zobel's nightstand. *Id.* On the government's telling, no messages were recovered from the phone, but the phone had the KIK application software downloaded, and records from KIK verified that the phone was the device used in the above-described online chats with the undercover agent. Mar. 13, 2025, Hr'g Tr. 12:8-24 (J.A. 353).

On April 7, 2023, with pre-trial proceedings underway, the government moved *in limine* to introduce evidence of Zobel's "prior sexual misconduct pursuant to Rules 404(b) and 414." Apr. 7, 2023, Mot. in Limine at 1 (J.A. 30). The government sought to introduce the facts underlying Zobel's 2011 conviction in the form of a one-paragraph summary of Zobel's plea colloquy. The proposed summary stated that, beginning in December 2008, Zobel began exchanging sexually explicit chats with a 13-year-old girl on the online social networking service Myspace, and in June 2009, Zobel met her and her 12-year-old friend in person and made them perform oral sex on him. *Id.* at 4 (J.A. 33). The government's motion argued that the summary was admissible under Rule 404(b) to show Zobel's identity, intent, motive, and lack of mistake or accident. *Id.* at 4-6 (J.A. 33-36). The government further argued that the evidence was admissible to show Zobel's propensity for child molestation under Rule 414. *Id.* at 8-11 (J.A. 37-40).

At a status conference on September 8, 2023, the district court denied the government's motion from the bench. Sep. 8, 2023, Hr'g Tr. 10:14-13:3 (J.A. 267-70). Announcing that it was handing down its "404(b) ruling," the district court explained that "the facts underlying [Zobel's] prior conviction are relevant to the present case" to show his motive and intent to commit the charged crimes. *Id*. at 10:14, 11:2-13 (J.A. 268). The court further explained that the proposed evidence "would also be admissible" under Rule 414, which "provides an exception to the general ban on propensity evidence contained in Rule 404(b)" for "child molestation offenses." *Id.* at 11:14-12:12 (J.A. 268-69). The district court nonetheless excluded the evidence under Rule 403 because "the probative value of the evidence of the defendant's prior bad acts is substantially outweighed by the danger of unfair prejudice" in light of the "risk that a jury will . . . improperly convict a defendant based

on a propensity inference." *Id.* at 12:5-13 (J.A. 269). For those reasons, the district court "denied" "the government's motion" and "excluded" "the details of the defendant's 2011 conviction . . . under Rule 403." *Id.* at 13:1-3 (J.A. 270).

At the end of that same conference, the government asked the court to "clarify the Court's 404(b) ruling" and raised the possibility that Zobel might "put identity at issue"—*i.e.*, argue that he was not the individual communicating with the undercover agent. *Id.* at 18:11-19:4 (J.A. 275-76). As government counsel started to explain that the probative value of the facts underlying the prior conviction would increase "if [identity] does become the defense"—because the match between the particular conduct underlying Zobel's prior conviction and the conduct described by the individual in the chat messages would tend to verify that Zobel was the individual sending the chats—the district court interrupted counsel to say, "if that were to arise, then that would be subject to reconsideration." *Id.* at 19:10-19 (J.A. 276).

On January 4, 2024, the government filed another motion to admit evidence concerning the prior conviction. Jan. 4, 2023, Mot. in Limine at 1 (J.A. 116). The motion sought to admit a redacted copy of Zobel's 2011 judgment (omitting the offense of conviction itself) and testimony from the lead FBI agent explaining how investigators were able to identify Zobel by matching the photographs sent by the KIK user with Zobel's court records. *Id.* at 5-6 (J.A. 120-21). The government further sought to elicit testimony from Zobel's probation officer regarding Zobel's living arrangements at the time of his arrest: in particular, that he lived in a separate unit with locking doors and its own internet connection, which the government argued was "necessary . . . to show that no one other than the defendant had access to the IP address associated with the KIK account." *Id.* at 6-7 (J.A. 121-22). It also sought to introduce

Zobel's statement to an FBI agent that he fled because he did not want to go back to jail. *Id.* at 7 (J.A. 122). For reasons not clear from the record, the district court never ruled on that motion.

On February 21, 2025, with the January 2024 motion still technically pending and the trial scheduled to start in less than a month, the government filed another motion *in limine* for evidence about Zobel's prior conviction. *See* Gov't Feb. 21, 2024, Mot. in Limine (J.A. 125-43). As relevant here, the government again sought to introduce a one-paragraph summary of Zobel's 2011 plea colloquy. *See id.* at 7-8 (J.A. 131-32). The government acknowledged the court's September 8, 2023, ruling denying its first motion *in limine* but explained that "[c]urrent defense counsel," who replaced defendant's counsel after the earlier ruling, "has informed the government that he does plan to assert an identity defense at trial—in other words, that the defendant was not the individual who communicated with the officer." *Id.* at 6 (J.A. 130). Additionally, the government said it had "limited and sanitized" the proposed summary paragraph to remove any details about the specific sexual act that Zobel admittedly engaged in with the minors. *Id.* at 7 (J.A. 131). The revised paragraph stated only that he "engaged in a sexual act" with a 13-year-old girl and did so again with the same girl and her 12-year-old friend. *Compare id.* at 7-8 (J.A. 131-32), *with* Apr. 7, 2023, Mot. in Limine 4 (J.A. 33). In light of those "changed circumstances," Gov't Feb. 21, 2025, Mot. in Limine 1 (J.A. 125), the government asked the court to "revisit its prior ruling" and admit the revised summary of Zobel's 2011 plea colloquy, *id.* at 6-7 (J.A. 130-31).

In the same motion, the government informed the court that the government would move at trial to "admit the entirety of the defendant's communications with the undercover

officer . . . as these communications constitute the offense conduct." *Id.* at 7 (J.A. 131).

Zobel did not file an opposition to the government's February 2025 motion. Instead, he filed his own motion *in limine* on the same day arguing, inter alia, that "the government should not be allowed to admit evidence of [Zobel's] prior conviction because there have been no material changes since the [c]ourt denied the government's first [Rule] 404(b) motion on September 8, 2023." Zobel Feb. 21, 2025, Mot. in Limine at 1 (J.A. 144).

The district court did not make individual rulings on those motions. Instead, while reviewing the government's list of proposed witnesses at a pretrial conference on February 25, 2025, the district court addressed the evidentiary issues raised by the parties' motions. *See, e.g.*, Feb. 25, 2025, Hr'g Tr. 10:4-22:15 (J.A. 307-19). At one point, the court asked defense counsel whether he intended to argue that Zobel was not the person communicating with the undercover officer. Defense counsel predicted that such an argument would be "part of [the] defense." *Id*. at 12:10-13:8 (J.A. 309-10). Later, government counsel reminded the court that it intended to introduce the entirety of the KIK user's "actual chats with the undercover agent," which constituted the charged offense conduct, including the photographs that the individual shared of his "court paperwork to essentially verify that he was a convicted sex offender" as well as his own "statements relating to his . . . prior conviction." *Id.* at 16:11-22, 18:13-18 (J.A. 313, 315).

As to the photographs shown in the chat, the district court stated that "under [its] [Rule] 404(b) ruling," the photographs could not be introduced to the extent they "indicate prior conviction for sexual offense" and would "have to be blackened out" accordingly. *Id.* at 17:15-19 (J.A. 314). As to

Zobel's statements in the chat, the court said "that might have to be excised" and ordered the government to submit those messages to the court "[b]ecause my 404(b) ruling is what I have told you it's going to be. We're not going to be cluttering the jury's mind up with that kind of stuff." *Id.* at 18:19-25 (J.A. 315). By "404(b) ruling," the district court seemed to refer to its September 8, 2023, ruling from the bench denying the government's April 2023 motion *in limine*. The court thus suggested that the 2023 ruling covered not just the factual summary from Zobel's plea colloquy that the government had sought to introduce in that motion, but *any* evidence related to Zobel's prior conviction. The district court did not separately address the "limited and sanitized" version of the plea-proffer summary the government had proposed in its February 2025 motion *in limine*.

Evidentiary issues related to Zobel's prior conviction came up again at a pretrial conference on March 13, 2025. The district court told government counsel: "[Y]ou're not going into the prior involvement. I already told you that. I don't know why you keep raising this up. I've already ruled on it." Mar. 13, 2025, Hr'g Tr. 13:7-9 (J.A. 354). Specifically addressing the chat messages and photographs the self-described sex offender shared with the undercover agent, the district court said that any messages or photographs that make "any reference to the prior criminal conviction" would be inadmissible. *Id.* at 22:8-9 (J.A. 363). Having reviewed the transcript, the court identified at least fifteen pages that it concluded had "some reference" to the prior conviction, including messages in which the individual alleged to be Zobel described his prior offense and conviction. *Id.* at 18:21-21:3 (J.A. 361-62). The district court instructed the government to share with the court and defense counsel by the following day the "excerpts" of the chat messages that the government intended to introduce, reminding the government to

"cut[] . . . down" any references to Zobel's prior convictions. *Id.* at 20:20, 22:7 (J.A. 20, 22).

The next day, March 14, 2025, the government filed its final motion *in limine*, attaching the chatroom messages and photographs with redactions ordered by the court. Gov't Br. 24. The motion also attached unredacted versions of the messages and photographs. Gov't Br. 24 n.16. The government moved to admit the unredacted versions.

The parties convened for another pretrial conference on March 17, 2025, the day before trial was set to commence. Mar. 17, 2025, Hr'g Tr. 1 (J.A. 402). The district court started the hearing by ordering three additional redactions to the redacted set of chatroom messages. *Id.* at 2:16-3:21 (J.A. 403-04). The court then asked whether the government had "anything else" "on the redacted chats." *Id.* at 9:13 (J.A. 410). Government counsel said she wanted to "clarify" that the district court's ruling was that the government may not introduce any evidence—chat messages or otherwise—referencing Zobel's prior convictions. *Id.* at 12:16-13:3 (J.A. 413-14). The district court, with apparent frustration, responded, "I have been crystal clear that no reference to his prior conviction, no reference to his being on probation is to be made." *Id.* at 13:19-21 (J.A. 414). When the government then followed up to "make sure that" "the plea colloquy from his prior conviction would also be excluded as well," the district court confirmed that it, too, would be excluded. *Id.* at 14:1-23 (J.A. 415).

On March 18, 2025, the day trial was set to begin, the government filed a notice of appeal. Notice of Appeal (J.A. 154). The notice designated as the order being appealed the district court's "[r]uling from the bench" on March 17, 2025, "excluding        evidence        referring        or        relating        to

appellee/defendant's prior conviction in 2011." *Id.* At a hearing later that afternoon, the district court asked the government "which of the motions *in limine* you are seeking an appeal of." Mar. 18, 2025, Hr'g Tr. 2:20 (J.A. 469). The government responded that it was appealing the denial of its February 21, 2025, and March 14, 2025, motions. *Id.* at 2:24-3:1 (J.A. 469-70). The district court observed that the government had not appealed the denial of its April 2023 motion, which happened "over a year ago." *Id.* at 3:2-4 (J.A. 470). The government responded that both the February 21 and March 14 motions were "renewing arguments related to 404(b) and 414, which we had originally made in our 2023 motion to the Court." *Id.* at 3:11-14 (J.A. 470).

Zobel moved to dismiss the appeal, arguing that this court lacked jurisdiction over the government's March 2025 appeal because it was untimely. A motions panel of our court referred that issue to the merits panel, so we consider it here.

## II.

We review a district court's determination under Rule 403 "with great deference, reversing only for grave abuse of discretion." *United States v. Vega*, 826 F.3d 514, 543 (D.C. Cir. 2016) (quoting *United States v. Clarke*, 24 F.3d 257, 265 (D.C. Cir. 1994)). Our deference is rooted in the recognition that the district court is in the "best position" to balance the probative value of a particular piece of evidence against the risk of unfair prejudice. *United States v. Whitmore*, 359 F.3d 609, 619 (D.C. Cir. 2004). That said, "[b]ecause a district court by definition abuses its discretion when it makes an error of law, the abuse-of-discretion standard includes review to determine that the discretion was not guided by erroneous legal conclusions." *Koch v. Cox*, 489 F.3d 384, 388 (D.C. Cir. 2007) (formatting modified).

14

On appeal, the government challenges the district court's decision to exclude "three 'buckets' of evidence" related to Zobel's prior conviction: (1) "Zobel's own references during the chats to his 2008 abuse of two girls, his 2011 conviction, and current supervision status, which he made to convince the U[nder] C[over agent] to trust him"; (2) "the government's proposed summary of details from the 2011 plea proffer that matched up to what Zobel told the UC about the prior crimes"; and (3) "the incidental references to Zobel's conviction and supervised release in the proposed testimony of the probation officer describing Zobel's living arrangements, the FBI agent's explanation of Zobel's identification, and Zobel's admission at the time of arrest in this case that he fled because he did not want to go back to jail." Gov't Br. 40-41.

In response, Zobel argues that this appeal was not timely filed under 18 U.S.C. § 3731, depriving us of jurisdiction to hear it, and that even if we have jurisdiction we should affirm because the district court did not gravely abuse its discretion in excluding the evidence. Zobel Br. 20-22.

**A.**

We first address our jurisdiction to hear this appeal. The government invokes our jurisdiction under 18 U.S.C. § 3731. That statute allows the government to "file interlocutory appeals of district court orders suppressing or excluding evidence" provided certain conditions are met. *United States v. Kalb*, 891 F.3d 455, 459 (3d Cir. 2018); *see* 18 U.S.C. § 3731. As relevant here, such appeals must be "taken within thirty days after the decision, judgment or order has been rendered." 18 U.S.C. § 3731. Zobel contends that the thirty-day requirement in Section 3731 is jurisdictional and that the government failed to notice its appeal within thirty days of the

district court's order excluding the prior-conviction evidence. Thus, Zobel argues, we lack jurisdiction to hear this appeal.

We hold that we have jurisdiction. Even assuming, without deciding, that Section 3731's thirty-day requirement is jurisdictional, we have jurisdiction because the government timely appealed.

We start with the district court's decision to exclude the government's proposed summary of Zobel's 2011 plea proffer. As the government concedes, the district court excluded the initial version of the proposed summary in September 2023, when it denied the government's first motion *in limine* asking the district court to rule that summary admissible. *See* Gov't Br. 32. On February 21, 2025, the government filed another motion *in limine* that included the revised proposed summary paragraph of the facts to which Zobel pleaded guilty.

The government argues that the thirty-day period for appealing the exclusion of that evidence did not begin to run until much later, because it was only at a hearing on February 25, 2025, at the earliest, and at another hearing on March 17, 2025, that the district court "indicate[d] that the denial of the government's request was final." Gov't Br. 32. And, because the government filed its notice of appeal the day after the March hearing, Notice of Appeal (J.A. 154), the government argues that its appeal was timely.

The government is correct. "[W]hen it is not clear that a district court order has resolved an issue, the time for filing a notice of appeal runs from the subsequent order that unambiguously does so." *United States v. Cos*, 498 F.3d 1115, 1122 (10th Cir. 2007); *see United States v. Santiago-Colón*, 917 F.3d 43, 51-52 (1st Cir. 2019). In September 2023, when the district court excluded the government's proposed plea-proffer summary, the court said its decision "would be subject to

reconsideration" if the defense chose to contest the identity of the individual who communicated with the undercover officer. Sep. 8, 2023, Hr'g Tr. 19:19 (J.A. 276). That statement "expressed only a tentative view" on the admissibility of the proposed plea-proffer summary and "did not finally adjudicate" the issue. *Cos*, 498 F.3d at 1121-22. To the contrary, it expressly invited the government to let things play out in district court and to seek reconsideration should it become necessary.

The district court later confirmed that defense counsel intended to contest identity. The parties first brought that development to the court's attention on February 21, 2025, when the government filed its third motion *in limine* alerting the court of the "changed circumstances." Gov't Feb. 21, 2025, Mot. in Limine 1 (J.A. 125). The first time the district court suggested that the plea proffer summary would be excluded notwithstanding the defense's decision to contest identity was at the February 25, 2025, hearing, where the court said that all evidence related to Zobel's "prior conviction for sexual offense" would be excluded from the government's case in chief "[b]ecause my 404(b) ruling is what I have told you it's going to be. We're not going to be cluttering the jury's mind up with that kind of stuff." Feb. 25, 2025, Hr'g Tr. 17:17, 18:23-25 (J.A. 314-315). Even assuming the district court said enough on February 25 to put the government on notice that it had made a final decision to exclude the plea-proffer summary, the government appealed within thirty days of that date.

In urging a contrary conclusion, Zobel does not address the explicit conditionality of the district court's September 2023 bench ruling regarding the initial plea-proffer summary. Instead, treating that ruling as final, Zobel argues that the government simply filed the same motion again and again to enlarge the time for noticing an appeal. *See* Zobel Br. 24-25.

But, for the reasons explained above, this is not a case in which the government filed a motion, the district court finally denied it, and the government repeatedly refiled its motion (or sought reconsideration) in an effort to resuscitate its appeal. *E.g.*, *B.H. by Pierce v. Murphy*, 984 F.2d 196, 199 (7th Cir. 1993).

The timeliness analysis for the other categories of evidence is even more straightforward. Unlike the plea-proffer summary, the district court did not even address until February 25, 2025, whether to exclude the other evidence related to Zobel's prior conviction. To be sure, the district court later suggested that its September 2023 bench ruling on the government's first motion *in limine* broadly excluded all evidence related to Zobel's prior conviction. *See* Mar. 18, 2025, Hr'g Tr. 3:23-4:1 (J.A. 470-71) ("My position has been consistently over the last year-plus that the prejudicial effect far outweighs the probative value in this particular case with regard to the defendant."); *id.* at 5:23 (J.A. 472) ("[M]y initial ruling . . . really hasn't changed conceptually."). But the record says otherwise.

The district court's initial ruling from the bench addressed "[t]he evidence that the government seeks to admit." Sep. 8, 2023, Hr'g Tr. 12:3-4 (J.A. 269). The then-pending motion *in limine* sought to introduce a particular piece of evidence. In weighing the risk of unfair prejudice under Rule 403, the court emphasized that "the government is not simply seeking to admit the fact of the defendant's prior conviction, but is seeking to admit a detailed description of what the defendant did with the two minor girls," *id.* at 12:19-22 (J.A. 269)—that is, the plea-proffer summary proposed in the government's first motion *in limine*. Neither the government's motion nor the court's disposition of it considered the other evidence that the district court later treated as excluded under its initial ruling.

Under the circumstances, the government reasonably understood the district court's September 2023 ruling to have conditionally excluded only the government's initial proposed plea-proffer summary. Because the district court announced its decision to exclude the other evidence on February 25, 2025, at the earliest—within thirty days of the government's notice of appeal—the government's appeal was timely as to that evidence as well.

Zobel never explains why the district court's September 8, 2023, ruling should be understood to have excluded evidence other than the initial plea-proffer summary. Instead, he relies primarily on the government's statements to the district court at the March 18, 2025, hearing—after the notice of appeal was filed—that its February 21 and March 14 motions *in limine* were "both renewing arguments related to [Rules] 404(b) and 414, which [the government] had originally made in [its] 2023 motion." Mar. 18, 2025, Hr'g Tr. 3:11-14 (J.A. 470). That "admission," Zobel argues, "contradict[s]" the government's arguments on appeal that "there were different 'buckets' of evidence at issue." Zobel Br. 26-27. But that "admission" cannot bear the load that Zobel puts on it. The government made no concession that it sought to introduce the same evidence in each of those motions, let alone that it was somehow waiving its appeal as to the evidence other than the plea-proffer summary. At most, the government's statements conceded that its arguments about probativeness and prejudice largely overlapped across the different pieces of evidence and various motions seeking rulings on their admissibility.

For these reasons, the record shows that the government timely appealed the district court's decision to exclude Zobel's prior-conviction evidence within "thirty days after the decision . . . ha[d] been rendered." 18 U.S.C. § 3731. Our

appellate jurisdiction confirmed, we proceed to the merits of the government's appeal.

**B.**

The government contends that the district court abused its discretion in excluding under Rule 403 the evidence of Zobel's prior conviction. While it raises various challenges to the court's Rule 403 analysis, we need to address only one: its contention that the district court's analysis "stands on [a] faulty legal . . . premise[]" because the court mistakenly treated a propensity inference as unfair for purposes of the Rule 403 analysis. Gov't Br. 57.

The district court's analysis, at least as spelled out on this record, rests on a misstatement of the legal relationship between Rules 403 and 414. Rule 414 creates an exception to Rule 404(b)'s general ban on the use of prior bad acts to prove propensity to commit further acts of the same type. Rule 414 thereby lifts the general bar on propensity inferences to allow a jury in a child-molestation case to consider evidence of the defendant's prior acts of child molestation to show the defendant's propensity to commit the charged offenses. That prior-acts evidence remains subject to Rule 403 balancing for unfair prejudice. But we read Rule 403 together with Rule 414 to mean that the chance that the jury will make a propensity inference can no longer be treated as categorically "unfair" under Rule 403. The district court thus erred in weighing the probative value of the prior-conviction evidence against the risk of unfair prejudice by apparently treating any propensity inference potentially arising from defendant's conviction of child molestation as unfairly prejudicial. We accordingly vacate the district court's exclusion of evidence relating to Zobel's prior acts of child molestation and remand for the

district court to reassess the admissibility of the evidence under the correct standard.

**1.**

As many circuits have recognized, Rule 414 "create[s] an exception to the general ban on propensity evidence contained in Rule 404(b)." *United States v. Seymour*, 468 F.3d 378, 385 (6th Cir. 2006); *see United States v. Jones*, 748 F.3d 64, 70-71 (1st Cir. 2014); *United States v. Larson*, 112 F.3d 600, 604 (2d Cir. 1997); *United States v. LeCompte*, 131 F.3d 767, 769 (8th Cir. 1997); *United States v. LeMay*, 260 F.3d 1018, 1024 (9th Cir. 2001); *United States v. Castillo*, 140 F.3d 874, 879 (10th Cir. 1998); *see also* 1 McCormick on Evidence § 190.10 (9th ed. Feb. 2025 update). Rule 414 authorizes the district court to "admit evidence that the defendant committed any other child molestation" and allows the jury to consider it on "any matter to which it is relevant," without exception for use to show propensity. The Rule's plain text thus allows the prosecution to use evidence of a defendant's prior acts of child molestation for the purpose of demonstrating to the jury that the defendant has a propensity to commit child molestation. The history and context of Congress's enactment of Rules 413, 414, and 415 confirm that conclusion. *See Seymour*, 468 F.3d at 384-85 (quoting 140 Cong. Rec. H8968, H8991 (daily ed. Aug. 21, 1994) (statement of Rep. Molinari)); *LeCompte*, 131 F.3d at 769.

Rule 414 evidence, like any other relevant evidence, is subject to Rule 403 balancing. Every circuit to consider the issue has so held. *See United States v. Spoor*, 904 F.3d 141, 154 (2d Cir. 2018); *United States v. Kelly*, 510 F.3d 433, 437 (4th Cir. 2007); *United States v. Hruby*, 19 F.4th 963, 968-69 (6th Cir. 2021); *United States v. Rogers*, 587 F.3d 816, 821 (7th Cir. 2009); *LeMay*, 260 F.3d at 1027-28; *United States v. Cole*,

162 F.4th 1070, 1079-80 (10th Cir. 2025); *cf. Martinez v. Cui*, 608 F.3d 54, 60 (1st Cir. 2010) (holding the same for Rule 415); *Johnson v. Elk Lake Sch. Dist.*, 283 F.3d 138, 144, 155-56 (3d Cir. 2002) (same).

That said, "Rule 414 affects the district court's analysis under Rule 403 because it alters the category of permissible inferences available to the jury." *Spoor*, 904 F.3d at 154. That is because Rule 414, as discussed above, supersedes Rule 404(b)'s general prohibition on the propensity inference and allows a jury to draw the inference that a defendant committed the charged child molestation because he has a propensity to do so. "Because Rule 41[4] identifies this [otherwise impermissible] propensity inference as proper, the chance that the jury will rely on that inference can no longer be treated as 'unfair' for the purposes of the Rule 403 analysis." *Rogers*, 587 F.3d at 822 (explaining how Rule 413, which is analogous to Rule 414, changes the Rule 403 analysis); *see Jones*, 748 F.3d at 70-71 (relying on *Rogers* to hold the same for Rule 414 evidence). "While Rule 403 remains the same, a court's Rule 403 analysis of prior conduct differs if the evidence falls under Rule 404(b) versus Rule 41[4]; in the former analysis, the rule has decreed that the propensity inference is too dangerous, while in the latter, the propensity inference is permitted for what it is worth." *Rogers*, 587 F.3d at 822. Rule 414, in other words, shifts the propensity inference from categorically unfairly prejudicial to permissibly probative for purposes of the balancing inquiry required by Rule 403.

Consistent with that modification, a district court retains "great latitude," as it ordinarily does under Rule 403, to assess and weigh the probative value of Rule 414 evidence against the risks identified in Rule 403, including the risk of unfair prejudice. *United States v. Warren*, 42 F.3d 647, 656 (D.C. Cir. 1994); *see Martinez*, 608 F.3d at 60; *Rogers*, 587 F.3d at 822.

"The term 'unfair prejudice,' as to a criminal defendant, speaks to the capacity of some concededly relevant evidence to lure the factfinder into declaring guilt on a ground different from proof specific to the offense charged." *Old Chief*, 519 U.S. at 180 (quoting Fed. R. Evid. 403). As other circuits have pointed out, Rule 414 evidence may still pose a danger of "unfair prejudice" because of its potential capacity to overwhelm the jury with passion or bias, *Rogers*, 587 F.3d at 822, or to compel the jury to convict "out of a sense of retribution rather than a determination of guilt," *Hruby*, 19 F.4th at 969. In discharging its duty to prevent jurors from using a propensity inference to punish the defendant for a prior offense, for example, or because he is a bad person, Rule 403 retains an important role in Rule 414 cases.

In sum, the jury may use Rule 414 evidence only to determine whether the defendant committed the charged crime. Insofar as a jury uses evidence of a defendant's prior bad act to infer that he is more likely to have committed the crime charged, Rule 414 evidence does not unfairly prejudice the defendant. Rule 414 does not, however, allow a jury to use that evidence "to convict because it is disgusted by the defendant's criminal past rather than convinced that he did the crime charged" or "because it believes the other-crimes evidence shows the defendant is an evildoer who must be locked up" regardless of whether he committed the charged crime. *Jones*, 748 F.3d at 71. The risk that a given piece of evidence will prompt the jury to convict on such improper bases remains a significant consideration for a district court assessing whether evidence offered under Rule 414 passes muster under Rule 403.

23

**2.**

In excluding the government's proposed evidence of Zobel's prior conviction, the district court relied on the reasoning in its September 2023 ruling from the bench denying the government's first motion *in limine*.  Even though that motion sought to introduce only the government's proposed 2011 plea proffer summary, the district court later referred to its September 2023 ruling as the basis for excluding any reference to Zobel's prior conviction from witness testimony and the transcript of the chat messages the government proposed to use at trial.  *See, e.g.*, Feb. 25, 2025, Hr'g Tr. 18:23-25 (J.A. 315); *see also* Mar. 18, 2025, Hr'g Tr 5:23-24 (J.A. 472) ("[M]y initial ruling . . . really hasn't changed conceptually.").  The flawed reasoning articulated in the district court's September 2023 ruling affects its decisions to exclude all the relevant evidence at issue on appeal.

In that initial ruling, the court began by noting that, under Rule 404(b), evidence of prior bad acts is "not admissible to prove a defendant's character, but is admissible for any non-propensity purpose."  Sep. 8, 2023, Hr'g Tr. 10:19-22 (J.A. 267).  The court acknowledged that "the facts underlying the defendant's 2011 conviction for coercion and enticement of a minor" are relevant "at least with respect to" two non-propensity purposes—motive and intent—because "the fact that Zobel previously exhibited a sexual attraction to minors and acted on that attraction is relevant to show that the defendant truly intended . . . [that] the undercover officer . . . abuse his daughter and videotape the abuse [for] the defendant's viewing, and was not simply discussing a harmless sexual fantasy."  *Id.* at 10:23-11:13 (J.A. 267-68).

The district court then discussed Rule 414, which the court (correctly) described as "provid[ing] an exception to the

general ban on propensity evidence contained in Rule 404(b)." *Id.* at 11:14-16 (J.A. 268). The court concluded that Rule 414 applied to the proposed evidence because Zobel is charged in this case with "child molestation offenses" as defined in Rule 414 and the conduct underlying his 2011 conviction also involved child-molestation offenses under that same definition. *Id.* at 11:22-12:4 (J.A. 268-69) (quoting Fed. R. Evid. 414(d)(2)(B), (D)). Neither party disputes that conclusion.

The district court then (again, correctly) observed that its conclusion that Rule 414 applies to the evidence at issue did not end its analysis because "[a]ll evidence sought to be admitted is still subject to Rule 403." *Id.* at 12:5-6 (J.A. 269). Applying Rule 403, the district court concluded that "the probative value of the evidence of the defendant's prior bad acts is substantially outweighed by the danger of the unfair prejudice." *Id.* at 12:7-9 (J.A. 269). Spelling out the "unfair prejudice" with which it was concerned, the court said there is "a greater risk that a jury will . . . improperly convict a defendant based on propensity inference if the defendant's prior sex-based offenses are admitted in a subsequent prosecution for a sex-based offense." *Id.* at 12:10-15 (J.A. 269).

Insofar as the district court treated a propensity inference as per se "improper" in balancing the probative value of Zobel's prior-conviction evidence against the risk of unfair prejudice, that was error. As explained above, because Rule 414 evidence invites a jury to consider prior acts of child molestation for any matter to which they are relevant, a propensity inference drawn from "any other child molestation" can no longer be presumed to be "unfair" under Rule 403. Even after recognizing that Rule 414 creates an "exception" to Rule 404(b)'s general ban on character evidence, the district court appears to have conducted its Rule 403 balancing as if Rule

414 did not remove the categorical bar against using prior acts of child molestation to show a propensity to commit the charged sex crimes involving a minor.

Our concern that the district court's Rule 403 analysis may rest on a faulty legal premise is compounded by the way the court relied on *United States v. Stout*, 509 F.3d 796 (6th Cir. 2007). In a prosecution for receipt and possession of child pornography, the government in *Stout* sought admission of evidence that the defendant had been convicted in state court of secretly videotaping a naked 14-year-old girl in the shower. *Id.* at 797-98. Notably, the government did not invoke Rule 414 in *Stout* to admit the video, apparently because a video of a naked child showering does not depict a minor engaging in "sexually explicit conduct," as defined in Chapter 110 of the U.S. Code. *See* Fed. R. Evid. 414(d)(2)(B); 18 U.S.C. § 2256(2)(A); *United States v. Hillie*, 14 F.4th 677, 687-88 (D.C. Cir. 2021). Indeed, the court in *Stout* recognized that its reasoning would be inapplicable in a case in which Rule 414 applies. 509 F.3d at 801-02. Applying Rule 404's ban on use of prior-acts evidence to show propensity, the Sixth Circuit in *Stout* affirmed the district court's conclusion that the prior-act evidence created a significant risk of unfair prejudice. *Id.* at 801. Yet the district court here, faced with the government's prior-acts evidence to which Rule 414 undisputedly applies, excluded it as unfairly prejudicial by analogy to *Stout*'s analysis of evidence sought to be admitted under Rule 404.

The district court's reasoning, at least as spelled out in the record, causes us to doubt that the district court correctly applied Rule 403 in a Rule 414 case. We therefore vacate the district court's decision to exclude Zobel's prior-conviction evidence and remand for reconsideration under the applicable legal standard. *See Vymetalik v. FBI*, 785 F.2d 1090, 1098 (D.C. Cir. 1986). Remand is appropriate in this case because

"[a]pplying Rule 403 to determine if evidence is prejudicial" is "within the province of the [d]istrict [c]ourt in the first instance." *Sprint/United Mgmt. Co. v. Mendelsohn*, 552 U.S. 379, 388 (2008). We nonetheless provide guidance for the proceedings on remand.

**3.**

In conducting its Rule 403 analysis on remand, the district court should give due weight to the probative value of the contested evidence relating to Zobel's prior conviction. To start, all the prior-acts evidence is probative of Zobel's intent. As the district court properly recognized, to prove the elements of attempted sexual exploitation of a minor, 18 U.S.C. § 2251(a), (e), "the government must show that Mr. Zobel intended to use or induce a minor to produce child pornography." Sep. 8, 2023, Hr'g Tr. 11:5-7 (J.A. 268); *see United States v. Torres*, 894 F.3d 305, 311 (D.C. Cir. 2018). Zobel's previous conviction for child molestation tends to show that he intended the undercover officer actually to abuse the officer's purported daughter and videotape the abuse for Zobel's viewing—instead of, for example, talking about the acts as an agreed plan only to heighten the titillating effect of a sexual fantasy.

Much of the evidence is also probative of identity. To prove the charged offenses, the government must establish that it was Zobel who sent the chat messages. The government proffered testimony from a probation officer about Zobel's living arrangements tending to rebut evidence the defense said it planned to introduce that other individuals had access to his phone. That testimony has significant probative value as to the identity of the individual sending the chats. Testimony from the FBI agent explaining how a law enforcement agent linked Zobel to the chats would also tend to identify Zobel as the

perpetrator. The probative value is even stronger for the plea-proffer summary and the chat messages because the conduct underlying Zobel's prior conviction matches the conduct the individual in the chat messages describes as his own prior offense, which strongly suggests that Zobel was the individual sending the chats.

The government, of course, may have other evidence through which it could establish that it was Zobel who communicated with the undercover agent on the chats. Indeed, at a hearing conducted on the same day as the government's notice of appeal in this case, the district court catalogued at least six alternatives that it said "ha[ve] probative value" on the issue of identity and no "prejudicial effect that outweighs [their] probative value." Mar. 18, 2025, Hr'g Tr. 4:6-5:14 (J.A. 471-72). It is certainly true that "what counts as the Rule 403 'probative value' of an item of evidence . . . may be calculated by comparing evidentiary alternatives." *Old Chief*, 519 U.S. at 184. The probative value of contested evidence should be "discount[ed]" if an evidentiary alternative has "substantially the same or greater probative value but a lower danger of unfair prejudice." *Id.* at 182-83. At the same time, a trial court must "make these calculations with an appreciation of the offering party's need for evidentiary richness and narrative integrity in presenting a case, and the mere fact that two pieces of evidence might go to the same point would not, of course, necessarily mean that only one of them might come in." *Id.* at 183. We cannot and do not purport to make those assessments in the first instance. *See Mendelsohn*, 552 U.S. at 388. We trust the district court will do so on remand with due regard for the significant probative value of the proposed evidence and any prejudice that may be considered consistently with Rule 414's distinctly broad relevance standard. *See supra* at 21-23.

The district court should also consider the government's argument that the chat messages should be admitted because "[c]ourts routinely admit evidence of a defendant's boasts about his prior crimes (however heinous) where those boasts were made in furtherance of the charged offense." Gov't Br. 41 (emphasis omitted) (citing *United States v. DeLuna*, 763 F.2d 897, 915 (8th Cir. 1985)); *see id.* at 42 n.27 (collecting cases). Some courts have treated such "boasts" as part of the charged crime and hence not subject to the limitations of Rule 404(b), even where Rule 414 or a similar rule does not apply. *See, e.g.*, *United States v. Levy*, 594 F. Supp. 2d 427, 440 (S.D.N.Y. 2009); *see also United States v. Bowie*, 232 F.3d 923, 927 (D.C. Cir. 2000) ("Rule 404(b) does not apply to evidence that is 'inextricably intertwined' with the crime charged . . . because Rule 404(b) applies only to evidence of a defendant's '*other* crimes, wrongs, or acts.'" (citation omitted)).

The government expressly stops short of making that argument here because Rule 414 independently allows the evidence at issue to be considered as propensity evidence. As already discussed, the fact that Zobel had exhibited sexual attraction to minors and acted on that attraction in the past may be considered to show that he is likely to have done the same thing again. That is an additional reason that the court should have considered in deciding whether to admit it. Still, there is force to the government's contention that, regardless of whether the chat messages are intrinsic to the charged offense and thus not subject to the limitations of Rule 404(b), the fact that "Zobel's invocation of his past crimes" in the chat conversation "was a vital part of his attempt to commit the new crime" cuts in favor of admitting the chat evidence under Rule 403. Gov't Br. 43. In assessing on remand the admissibility of

those portions of the chat evidence, the district court should address their role in the charged offense.

* * *

For the foregoing reasons, we vacate the district court's exclusion of evidence related to Zobel's prior conviction and remand for further proceedings consistent with this opinion.

<em>So ordered</em>.

KATSAS, *Circuit Judge*, concurring: Rule 403 of the Federal Rules of Evidence sets a "high barrier" for the exclusion of relevant evidence on the ground of unfair prejudice. *United States v. Lieu*, 963 F.3d 122, 128 (D.C. Cir. 2020). Indeed, we have held for decades that Rule 403 "tilts, as do the rules as a whole, toward the admission of evidence in close cases." *United States v. Green*, 149 F.4th 733, 751 (D.C. Cir. 2025) (quoting *United States v. Moore*, 732 F.2d 983, 989 (D.C. Cir. 1984)). As the Court persuasively demonstrates, the contested evidence in this case has many permissible and important uses—including to show that David Zobel has a propensity to commit sex crimes against young girls. *Ante* at 26–29. So it would be surprising if Rule 403 were to support exclusion of this highly relevant evidence. Nonetheless, I agree with the Court's decision to leave the Rule 403 balancing to the district court in the first instance. *See Sprint/United Mgmt. Co. v. Mendelsohn*, 552 U.S. 379, 387–88 (2008).